UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YOUNG BUISSON                                    CIVIL ACTION

VERSUS                                           NO. 12-2008

BOARD OF SUPERVISORS OF THE          MAGISTRATE JUDGE
LOUISIANA COMMUNITY AND                   JOSEPH C. WILKINSON, JR.
TECHNICAL COLLEGE SYSTEM

## ORDER AND REASONS ON MOTIONS

In this employment discrimination action, plaintiff, Dr. Young Buisson, a former

chemistry instructor at Delgado Community College, sued her former employer,

defendant Board of Supervisors of the Louisiana Community and Technical College

System ("Delgado").  Plaintiff alleges that defendant subjected her to a hostile work

environment and to discrimination based on her race (Asian) and national origin (South

Korean), and that defendant retaliated against her for having complained about the

alleged hostile work environment and discrimination, all in violation of Title VII.

Although her complaint also asserts a claim of age discrimination under the Age

Discrimination in Employment Act, Dr. Buisson states in her memorandum in opposition

to defendant's summary judgment motion that she voluntarily dismisses that claim.

Record Doc. No. 46-2 at p. 1.  The court treats this statement as a motion for voluntary

dismissal under Fed. R. Civ. P. 41(a)(2).

Delgado moved for summary judgment on all of plaintiff's claims.  Record Doc.

No. 36.  Defendant's motion is supported by excerpts from plaintiff's deposition;

affidavits from (1) Philias Denette (Japanese American), Chairman of Biology and Sciences College Wide at Delgado, who was plaintiff's supervisor before the events at issue in this action, (2) Raymond Duplessis (African-American), Chair of Delgado's Physical Sciences Department ("Duplessis"), and (3) Thomas Gruber (Caucasian), Dean of Delgado's Science and Mathematics Division ("Dean Gruber"); excerpts from the deposition of Dr. Bereket G. Tewolde (a native of Africa), who was plaintiff's immediate supervisor during much of the time period at issue; and numerous verified exhibits. Dr. Buisson alleges that Duplessis and Dean Gruber perpetrated the acts of discrimination and retaliation.

Plaintiff received leave to file an untimely memorandum in opposition to defendant's motion for summary judgment. Record Doc. Nos. 46, 51, 52. She supports her opposition with her own declaration under penalty of perjury; declarations from two former instructors in the Physical Sciences Department, Troy P. Sampere (Caucasian), Syed A. Ahmed (Indian national origin and Middle Eastern race), and two other fact witnesses, Joel W. Spillman and J. Harry Rees; many of the same documentary exhibits included in defendant's submissions; some additional documents; and a few more pages from the transcript of plaintiff's own deposition. Dr. Buisson also received leave for late filing of Plaintiff's Exhibit 4 and her statement of contested material facts, which had been inadvertently omitted from her opposition memorandum. Record Doc. Nos. 48, 51.

2

Having considered the complaint, the submissions of the parties, and the applicable law, and for the following reasons, IT IS ORDERED that plaintiff's motion to dismiss voluntarily is GRANTED and that her age discrimination claim is DISMISSED WITH PREJUDICE.   Fed. R. Civ. P. 41(a)(2).   IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED and that plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

4

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

II.     BRIEF SUMMARY OF UNDISPUTED FACTS

The following facts are established by the competent summary judgment evidence and are accepted as undisputed solely for purposes of the pending motion for summary judgment.  Additional facts are discussed in the analysis sections for each claim below.

Dr. Buisson has a Ph.D. in inorganic chemistry.  She worked at Delgado as a temporary chemistry instructor from the fall semester of 2009 until July 8, 2011, when Dean Gruber advised her that he would not renew her contract for another year.

Duplessis became Chair of the Physical Sciences Department in the summer of 2010.  Dean Gruber was his supervisor.  Duplessis oversaw the department's move to a new building during the early weeks of the Fall 2010 semester.

In October 2010, plaintiff and six other candidates applied for two permanent chemistry teaching positions.  All candidates were interviewed by a hiring committee that consisted of an ethnically diverse group of seven instructors from Delgado's science departments.  All candidates were asked the same ten questions.  Each candidate gave a presentation to the committee.   After the interviews, each member of the hiring committee assigned a numeric score to each candidate.

6

The scores from the hiring committee were averaged and the final scores were reported to Dean Gruber. Dr. Tewolde and Dr. Tamika Duplessis ("Tamika Duplessis") were the two highest scoring candidates. Tamika Duplessis is Raymond Duplessis's wife and is African-American. Dr. Buisson had the fourth highest score and was qualified for the position. The committee recommended that Dr. Tewolde and Tamika Duplessis be selected for the two permanent positions.

After receiving the committee's scores and recommendations, Dean Gruber interviewed all of the candidates again. Duplessis sat in during the interviews, but did not participate in them. Dean Gruber made the final decision to select Dr. Tewolde and Tamika Duplessis without any input from Duplessis. Dean Gruber relied on the committee's recommendations when he made his decision.

As soon as Dr. Tewolde accepted the permanent position, he was given the title of Lead Chemistry Instructor and became plaintiff's immediate supervisor. He also supervised Tamika Duplessis. He reported directly to Dean Gruber, rather than to Duplessis, the department chair.

III.   HOSTILE WORK ENVIRONMENT CLAIMS

Dr. Buisson claims that numerous incidents during the 2010 to 2011 academic year created a hostile work environment based on her race and/or national origin. She alleges that Duplessis and Dean Gruber favored African-American and African instructors and that Duplessis and Dean Gruber harassed her and other non-African-

7

American or African instructors based on their race and/or national origin.  Specifically,

plaintiff complains of the following:

1.    In the early part of the Fall 2010 semester when classrooms were being reconfigured to accommodate the Physical Sciences Department's move to a new building, Duplessis and Dr. Tewolde interrupted her classes by coming in while she was teaching, sometimes with construction workers and sometimes alone, to look at her and check up on her.

2.    Dr. Buisson did not receive a filing cabinet or bookshelves in her office after the move to the new building.

3.    She did not receive e-mail communications from Duplessis on two occasions.

4.    Duplessis solicited complaints about plaintiff from her students.

5.    At the end of June 2011, Dr. Buisson was relocated to another office after she was in a verbal altercation that had been started by Tamika Duplessis, one of her office mates.

6.    Duplessis tampered with plaintiff's computer and accessed her personal information.

7.    Duplessis and Dean Gruber ignored Dr. Buisson's suggestions about departmental policies.  They applied double standards by enforcing laboratory policies more strictly against her than against African-American and African instructors.

8.    Tamika Duplessis was allowed to conduct final examinations in her classes three weeks early, and was allowed to bring her children to work, while plaintiff was not allowed to do these things.

9.    Duplessis took notes from plaintiff's office door that Dr. Buisson left there to advise her students of why she was not in her office.

10.    Duplessis printed a list of the students who were taking plaintiff's classes and left it on a public printer.  It contained Dr. Buisson's faculty identification number and student identification information.

11.    On unspecified dates and occasions, Duplessis referred to Dr. Buisson as a "chink" and "Kim Young," an apparent reference to the North Korean dictator.

Defendant argues, and the court finds, that plaintiff has not produced <u>competent</u>

<u>evidence</u> sufficient to establish a genuine issue of disputed fact concerning the third and

fourth prongs of a prima facie case of hostile work environment claim based on race or national origin. The incidents of which she complains were not sufficiently severe or pervasive, singly or in combination, to alter the conditions of her employment and create an abusive working environment. In addition, Dr. Buisson offers only speculation, opinion and conclusory allegations that any of the actions taken by Duplessis and/or Dean Gruber were based on her race or national origin.

To establish a prima facie case of a hostile work environment under Title VII, Dr. Buisson must prove that

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [a prohibited ground]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.
> To satisfy the fourth part of that test, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

Mitchell v. Snow, 326 F. App'x 852, 856-57 (5th Cir. 2009) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (emphasis added); accord Wooten v. Fed. Express Corp., 325 F. App'x 297, 300 n.10 (5th Cir. 2009); Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 434-35 (5th Cir. 2005).

When, as in the instant case, "'the harassment is allegedly committed by a supervisor with immediate or successively higher authority, the plaintiff employee needs to satisfy only the first four of the elements listed above.'" <u>Parker v. La. Dep't of Special Educ.</u>, 323 F. App'x 321, 325 (5th Cir. 2009) (quoting <u>Celestine v. Petroleos de Venezuela SA</u>, 266 F.3d 343, 353 (5th Cir. 2001)).  If she does so, defendant will have the opportunity to prove its affirmative <u>Ellerth/Faragher</u> defense.

If plaintiff fails to produce evidence that raises a material disputed fact as to any of the elements of a prima facie case, summary judgment must be granted in defendant's favor.  <u>Harvill</u>, 433 F.3d at 439.

Delgado concedes that Dr. Buisson belongs to a protected group and, for the purposes of summary judgment only, that the incidents complained of were unwelcome.  However, defendant argues that plaintiff cannot satisfy the third prong of a prima facie case because she has no evidence to show that any of the incidents were based on her race or national origin, and that she cannot satisfy the fourth prong of a prima facie case because the incidents do not rise to the necessary level of severity or pervasiveness.

As to the fourth prong of a prima facie case, the Fifth Circuit has held that

[a] workplace environment is hostile when it is <u>permeated</u> with discriminatory intimidation, ridicule, and insult, that is <u>sufficiently severe or pervasive</u> to alter the conditions of the victim's employment.  However, <u>not</u> all harassment, including simple teasing, offhand comments, and <u>isolated incidents (unless extremely serious)</u>, will affect a term, condition, or privilege of employment.  To be actionable, the working environment must be objectively hostile or abusive.  Whether an environment is hostile

or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009) (quotations and citations omitted) (emphasis added).

With the exception of Duplessis's alleged race- or national origin-based remarks (which are addressed separately below), Delgado has offered reasonable explanations for all of the events of which plaintiff complains. None of these scattered events were severe or pervasive. In addition, plaintiff has offered only speculation, opinions (her own and those of other witnesses) and conclusory allegations that any of the actions were based on her race or national origin. These events are as follows.

Duplessis entered plaintiff's classroom at times in connection with the ongoing construction during the fall semester. Dr. Buisson admitted in her deposition that he did this in her classroom and in those of other instructors, and that such intrusions were necessary. Plaintiff makes vague allegations that, at unspecified times and an unspecified number of times, Duplessis or Dr. Tewolde opened her classroom door or entered her classroom to observe her. Assuming that they did so, such actions were within their supervisory authority. Plaintiff has offered no evidence that these incidents were either severe, pervasive or race- or national origin-based.

11

Defendant's evidence establishes that it provided each instructor with identical office equipment after the move to the new building, but it did not have the funds to give them all bookshelves and filing cabinets. Plaintiff's own evidence confirms that other instructors did <u>not</u> receive such furniture. Although she speculates that this was because she and the others were not African-American or African, she has offered <u>no competent evidence</u> that Delgado provided such equipment only to African-American or African instructors, or that Delgado was motivated by any race- or national origin-based animus.

Dr. Buisson's evidence shows that she did not receive two reminder e-mails from Duplessis and one from the Registrar that were sent to some other instructors in her department. Duplessis explains that he learned that several instructors did not receive his first e-mail in April 2011, and he resent it to all instructors, including Dr. Buisson, who received it. Defendant's Exh. 4, Duplessis affidavit at ¶ 7. He explains that he did not send his second, June 21, 2011 reminder e-mail about entering mid-term grades to plaintiff because he only sent it to those instructors who needed to be reminded, based on their past performance, and she was not one of those. <u>Id.</u> at ¶ 8. Dr. Buisson received Duplessis's second e-mail and another one that was sent by the Registrar when another instructor forwarded them both to her. She then asked Duplessis and the Registrar to send them to her, which they did. She suffered no adverse consequences from these isolated, trivial incidents and has proffered no evidence that either Duplessis or the Registrar had a discriminatory motive for excluding her from these e-mails.

12

Plaintiff's allegation that Duplessis accessed her computer and tampered with it is completely unsupported by any competent evidence.  She admittedly has no personal knowledge that Duplessis actually accessed her computer and relies solely on a screen shot of what appears to be his screen name on a login screen.  Defendant's evidence shows that Dr. Buisson's computer files were password-protected.  Even if Duplessis logged in on her computer on one occasion, she has presented no evidence of any "tampering" with her files or access to her confidential, password-protected information.  This unproven, isolated incident was not severe, nor did it accumulate with anything else amounting to pervasive conduct.

Duplessis printed a list of Dr. Buisson's students that was left on the faculty printer for an unknown length of time before plaintiff found it.  There is no evidence that the printer was in a public area or that the document was left there intentionally or for a long period.  Even if it was, plaintiff's faculty identification number was not the kind of personal data identifier that could be considered confidential information, and it could not have allowed anyone to access her confidential information.  Plaintiff testified that she was concerned that Duplessis was evaluating the student withdrawal rates in her classes and she speculated that he was looking for a reason to fire her.  Defendant's competent summary judgment evidence establishes that tracking Dr. Buisson's class enrollments and job performance were well within Duplessis's job responsibilities as chair of the department and that he did the same for all instructors.  This extremely minor

incident of conduct within a supervisor's rightful authority raises no inference of a hostile work environment.

Plaintiff shared an office with Dr. Tewolde and Tamika Duplessis. Plaintiff was relocated to another office on June 28, 2011, after Tamika Duplessis confronted Dr. Buisson a few days earlier and accused her of soliciting information about Tamika Duplessis from Tamika Duplessis's students. Tamika Duplessis shouted at plaintiff and used curse words during the verbal confrontation. Although Dr. Buisson now denies that she solicited any such information from Tamika Duplessis's students, Plaintiff's Exh. 1, plaintiff's declaration at ¶ 11, she admitted in her deposition that she had done so on at least one occasion. Defendant's Exh. 1, plaintiff's deposition at pp. 51-60. The student from whom Dr. Buisson had solicited information about Tamika Duplessis complained orally to Raymond Duplessis about plaintiff's actions in early June 2011 and followed up in a written e-mail on July 20, 2011. Duplessis forwarded the information to Dean Gruber. Defendant's Exh. 5, Duplessis affidavit at ¶ 12; Defendant's Exh. 7, e-mail thread dated June 13 through July 20, 2011.

To the extent that plaintiff's declaration contradicts her sworn deposition testimony without any explanation, it is inadmissible and does not create any genuine issue of disputed fact. Bouvier v. Northrup Grumman Ship Sys., Inc., 350 F. App'x 917, 921 (5th Cir. 2009); Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 482 (5th Cir. 2002); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

14

After their verbal confrontation, Tamika Duplessis filed a written grievance against Dr. Buisson.  Defendant's Exh. 8, grievance dated June 23, 2011.  The two instructors attended a grievance meeting in Dean Gruber's office on June 28, 2011 during which he heard their respective versions.  He told them to work together as colleagues and told each one to focus on her own work and teaching responsibilities.  Defendant's Exh. 5, Gruber affidavit at ¶ 9.

Duplessis then recommended, and Dean Gruber approved his recommendation, that Dr. Buisson be moved out of the office that she shared with Dr. Tewolde and Tamika Duplessis.  Dean Gruber reasoned that, in addition to plaintiff's difficulties with Tamika Duplessis, Dr. Buisson's relationship with Dr. Tewolde had become strained after she disagreed with his negative evaluation of some aspects of her performance.  Dean Gruber decided that it was appropriate to move Dr. Buisson.  Defendant's Exh. 4, Duplessis affidavit at ¶ 11; Defendant's Exh. 5, Gruber affidavit at ¶ 9.  The actions of Duplessis and Dean Gruber to deal with plaintiff's strained office situation in the face of a written grievance by her office mate raise no inference of an abusive work environment.  Dr. Buisson has provided no competent evidence that the decision to move her was based on any discriminatory animus.

Plaintiff has presented <u>no evidence</u> to support her allegation that Duplessis solicited complaints about her from her students.  Rather, defendant's competent evidence establishes that, between October 2010 and June 2011, Duplessis and Dean

15

Gruber received at least seven specific written complaints about her from students. Defendant's Exh. 4, Duplessis affidavit at ¶ 12; Defendant's Exh. 5, Gruber affidavit at ¶ 10; Defendant's Exhs. 7, 9 through 14, copies of student complaints.  Her previous supervisor, Denette, also received "several student complaints about her" when he supervised her between the fall of 2009 and August 2010.  Defendant's Exh. 3, Denette affidavit at ¶ 6.

Dr. Buisson raises two issues regarding the alleged ignoring of her policy suggestions.  First, her own evidence shows that she made only a vague reference to a Delgado policy that required chemistry instructors to wear closed-toe shoes in an e-mail to Duplessis and Dean Gruber that largely dealt with another, more serious issue regarding unclean and unsafe lab conditions.  Plaintiff's Exh. 1, plaintiff's declaration at ¶ 40.  Dean Gruber does not recall her vague reference to footwear and never responded to it.  Defendant's Exh. 5, Gruber affidavit at ¶ 11.  There is no evidence that plaintiff ever complained to any supervisor about specific incidents of anyone wearing open-toed shoes.  She was never reprimanded concerning her own shoes.  Id.  This cannot possibly be considered a severe or pervasive incident of harassment.

Plaintiff's second issue concerns Delgado's policy that laboratory doors be kept open during chemistry experiments.  Duplessis sent an e-mail to all instructors on June 15, 2011 reminding them of the strict policy.  In an e-mail to the same parties on June 20, 2011, Dr. Buisson cited a contrary authority that lab doors should be kept

closed.  Defendant's Exh. 19, e-mail thread dated from June 15 to June 21, 2011.  Dean Gruber then asked her to "please act as Mr. Duplessis and Dr. Tewolde have directed," and plaintiff agreed that she would do so.  Defendant's Exh. 16, e-mail thread dated from June 15 to June 20, 2011; Defendant's Exh. 19.

On June 21, 2011, Duplessis observed that plaintiff's lab door was only partially open, so he opened it fully.  She again partially closed it.  Duplessis then sent an e-mail to all instructors reiterating the open-door policy.  Defendant's Exh. 18, e-mail thread dated June 21, 2011.  Dean Gruber e-mailed plaintiff the same day, stating that she had been insubordinate for failing to do as she had been told and as she had promised to do, and that her insubordination made her subject to immediate dismissal.  Defendant's Exh. 19.  No other adverse action followed.  The next day, Dr. Buisson saw that Dr. Tewolde's lab door was closed, but she did not know whether he was lecturing, during which it is undisputed that the doors could be closed, or conducting experiments.  She testified that she reported this incident to Dean Gruber and that he did nothing, although it is unclear that she had personal knowledge of this alleged fact.  Once again, however, none of these incidents are severe or pervasive and plaintiff has pointed to no evidence of any race- or national-origin based motives.

Plaintiff alleges that Tamika Duplessis was given more flexible working conditions than she was, in that Tamika Duplessis gave her final exams three weeks early and Tamika Duplessis was allowed to bring her children to work.  Delgado's competent

17

summary judgment evidence establishes that it had a policy of allowing instructors to give final exams early in certain circumstances and that Tamika Duplessis did so in accordance with the policy.  Defendant's Exh. 4, Duplessis affidavit at ¶ 16.  Dr. Buisson never sought nor was denied leave to give early exams, so this could not possibly be an incident of harassment directed at her.

Plaintiff admits that she brought her 12-year-old son to work once and left him unattended for about 30 minutes while she was teaching.  Defendant's Exh. 1, plaintiff's deposition at pp. 112-13.  To the extent that she denies this in her declaration, the declaration is inadmissible.  Bouvier, 350 F. App'x at 921; Copeland, 278 F.3d at 482; S.W.S. Erectors, 72 F.3d at 495.  After Dr. Buisson complained to Dean Gruber that other instructors were bringing their children to work, Duplessis admitted to Dean Gruber that he had brought his sick child to work on one occasion.  Dean Gruber orally reprimanded Duplessis and instructed him to send an e-mail to all instructors, which Duplessis did on February 15, 2011, reminding them that children should not be brought to work.  Defendant's Exh. 4, Duplessis affidavit at ¶ 17; Defendant's Exh. 5, Gruber affidavit at ¶ 13.  Plaintiff was never reprimanded.  She has proffered only her subjective and speculative belief that the e-mail was directed at her and motivated by her race or national origin.

Dr. Buisson has presented evidence that she once observed Duplessis removing a "sticky note" that she had left on her office door.  This isolated instance cannot possibly

18

constitute a severe or pervasive action and her unsupported mere speculation that he did

the same thing on other occasions does not create a disputed fact issue.

>Thus, as to all of these incidents, plaintiff's

>evidence is insufficient to establish a <u>prima facie</u> case [of harassment]. . . .
>[T]here is nothing in the record, aside from her personal claims, that she
>was harassed at all.  Even assuming that she was harassed, she offers only
>her own subjective belief that it was on a prohibited ground.
>>Not even [plaintiff] herself explained why she felt that her race [or
>national origin] was the cause of the mistreatment she alleges.  <u>A fortiori</u>
>there is no evidence that the harassment was severe or was ignored by her
>supervisors  .  .  .  .   "[C]onclusory allegations, speculation, and
>unsubstantiated assertions are inadequate to satisfy the nonmovant's
>burden" in opposing summary judgment.

<u>Mitchell</u>, 326 F. App'x at 857.

Finally, the evidence indicates that Duplessis's alleged "chink" and "Kim Young"

remarks were made once on unspecified dates.  Plaintiff's Exh. 1, plaintiff's declaration

at ¶ 67; Plaintiff's Exh. 3, Ahmed declaration at ¶ 47.  Although such comments are

objectionable, "[d]iscourtesy or rudeness, offhand comments and isolated incidents

(unless extremely serious) will not amount to discriminatory changes in terms and

conditions of employment."  <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 264 (5th

Cir. 1999) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998)) (quotation

omitted); <u>accord</u> <u>Forbes v. Catalyst Tech. Inc.</u>, 31 F. App'x 836, 2002 WL 243338, at *1

(5th Cir. Jan. 23, 2002).  The isolated remarks in the instant case "do not rise to the level

of severity or pervasiveness required to show a hostile work environment." <u>Cavalier v. Clearlake Rehab. Hosp., Inc.,</u> 306 F. App'x 104, 107 (5th Cir. 2009).

In sum, "[t]he conduct alleged by [plaintiff] was largely episodic and does not rise to the level required for liability as a hostile work environment under Title VII." <u>Forbes,</u> 2002 WL 243338, at *1.  Because Dr. Buisson has failed to provide evidence to raise a disputed fact issue as to the third and fourth prongs of a prima facie case, Delgado is entitled to summary judgment as a matter of law on her hostile environment claims.

IV.   <u>DISCRIMINATION CLAIMS</u>

A.   <u>Title VII Standard of Review</u>

Dr. Buisson claims that she experienced four adverse employment actions based on her race and/or national origin:  (1) she was not selected for one of the available permanent positions in October 2010; (2) she received a "wrong," or lower than warranted, performance evaluation from her supervisor, Dr. Tewolde, Defendant's Exh. 23, "Supervisor's Evaluation Checklist" dated April 12, 2011; (3) she taught a class in the Spring 2011 semester for which she was not paid; and (4) her temporary teaching contract was not renewed in July 2011, after Dean Gruber had already offered her a permanent position.  While unclear, she may also be arguing that the actions described in the preceding section of this opinion, which allegedly created a hostile work environment, also were discriminatory, adverse employment actions.

An individual asserting a discrimination claim under Title VII must first establish a prima facie case.

> [Plaintiff] can establish a prima facie case for discrimination if he can show that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.  If a prima facie case for discrimination can be established, then the burden shifts to the [defendant] to rebut [plaintiff's] case by articulating a legitimate, nondiscriminatory reason for his termination.  If the [defendant] present[s] such a reason, then the burden shifts back to [plaintiff] to show that the [defendant's] reasons for terminating his employment [or taking other adverse employment action] are not true, but are mere pretexts for discrimination, or that the reasons are true, but his race [or other protected characteristic] was a motivating factor.

Jackson v. Dallas Cnty., 288 F. App'x 909, 911 (5th Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804-05 (1973); Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)) (quotations omitted).

At the final stage, "plaintiff's ultimate burden is to persuad[e] the trier of fact that the defendant intentionally discriminated against the plaintiff."  Turner v. Kans. City S. Ry., 675 F.3d 887, 900 (5th Cir. 2012) (quotation omitted).

B.    The Majority of the Incidents Were Not Adverse Employment Actions

With regard to the same acts that allegedly created a hostile work environment, Delgado argues that Dr. Buisson cannot establish the third prong of a prima facie case of discrimination because none of the acts was an adverse employment action, as defined

by the Fifth Circuit.  Defendant also contends that the April 2011 performance evaluation was not an adverse employment action.  The court agrees as to all of these actions.

The Fifth Circuit has held repeatedly that the term "adverse employment action" for purposes of discrimination claims includes "'only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating,'" Bouvier v. Northrup Grumman Ship Sys., Inc., 350 F. App'x 917, 922 (5th Cir. 2009) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007)), or actions that "'would tend to result in a change of [plaintiff's] employment status, benefits or responsibilities.'" Martin v. Lennox Int'l Inc., 342 F. App'x 15, 18 (5th Cir. 2009) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999)); accord Anthony v. Donahoe, 460 F. App'x 399, 403 (5th Cir. 2012).  When the summary judgment evidence contains no objective showing of a loss in compensation, duties or benefits, the evidence is insufficient to establish an adverse employment action.  Id. (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004); Serna v. City of San Antonio, 244 F.3d 479, 485 (5th Cir. 2001)).  This standard concerning the adverse employment action prong of a prima facie case of discrimination has not been altered by the decision of the United States Supreme Court in Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006), which confined the new standard for an "adverse employment action" announced in that case to retaliation claims.  Mitchell, 326 F. App'x at 854-55 (citing White, 548 U.S. at 67).

None of the allegedly harassing actions described by plaintiff resulted in any loss in compensation, duties or benefits.  As a matter of law, these are not adverse employment actions and plaintiff cannot establish a prima facie case of discrimination based on any of them.  See King v. Louisiana, 294 F. App'x 77, 85-86 (5th Cir. 2008) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions"); Ellis v. Principi, 246 F. App'x 867, 870-71 (5th Cir. 2007) (citing Washington v. Veneman, 109 F. App'x 685, 689 (5th Cir. 2004)) (A supervisor's decisions to give plaintiff less favorable work assignments, deny her a performance award and require her to use leave time to compensate for her tardiness are not adverse employment actions.  Decisions "to enforce the employer's protocol" regarding such issues "can hardly be considered an ultimate employment decision."); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, oral threats, abusive remarks and threats of termination not adverse employment actions); Burgess v. Cleco Corp., No. 11-1704, 2013 WL 673481, at *6 (W.D. La. Feb. 22, 2013), aff'd, No. 13-3023,3 2013 WL 4517281 (5th Cir. Aug. 27, 2013) ("While [plaintiff] may have found [defendant's] conduct offensive, verbal reprimands and unfair treatment do not constitute actionable adverse employment actions for claims of discrimination."); Montgomery v. Sears Roebuck & Co., 720 F. Supp. 2d 738, 744-45 (W.D. La. 2010) (no adverse employment action when plaintiff was offered a demotion at the same pay rate, which she refused; remained in her job without any pay

reduction; and received written disciplinary notices); <u>Lopez v. Kempthorne</u>, 684 F. Supp.
2d 827, 885 (S.D. Tex. Jan. 14, 2010) ("denial of telecommuting agreement, denial of use
of an entrance door, close monitoring by her supervisor, changes in her drafts of
engagement letters, delayed award, assignment to a small office, denial of a larger and
better located office, and denial of work requests" not adverse employment actions); <u>id.</u>
at 886 (supervisor's demeaning remarks to plaintiff, which were unrelated to any of
plaintiff's protected classes, were not adverse employment actions).

On April 12, 2011, Dr. Tewolde completed the Supervisor's Evaluation Checklist
and indicated that plaintiff "needs work" on many of the listed factors.  Defendant's
Exh. 23.  Dr. Buisson alleges that the evaluation was "wrong" because she disagreed with
those findings.  She speculates that this evaluation could have been used at a later date
with regard to a possible promotion.

However, Dean Gruber's affidavit establishes that he made all decisions that
affected her employment, including whether to offer her a permanent faculty position and
whether to enter into another temporary contract with her.  Defendant's Exh. 5, Gruber
affidavit at ¶ 20.  He states without contradiction in the record that an evaluation by an
instructor's supervisor "is simply a tool to increase the performance and effectiveness of
the instructor.  Evaluations are <u>not</u> considered in determining whether to offer a
permanent position to instructors or to execute a new contract with instructors."  <u>Id.</u>
(emphasis added).  Dean Gruber confirms that statement when he avers that "the

evaluations [of the candidates] for the permanent positions available in 2010 were <u>not</u> considered in the decision making process."  <u>Id.</u> (emphasis added).

Dean Gruber lists all of the factors that he considered when he decided not to renew plaintiff's contract.  <u>Id.</u> at ¶ 22.  The April 2011 Evaluation Checklist is <u>not</u> one of them.  Dr. Buisson has provided <u>no competent summary judgment evidence</u> to contradict Dean Gruber's affidavit.

As a matter of law, a lower than expected performance "review itself, standing alone, plainly does not meet the ultimate-employment-decision test."  <u>Mitchell</u>, 326 F. App'x at 855.  When, as here, plaintiff has produced "no evidence connecting [her] performance evaluation to her compensation" or another ultimate employment decision, she "has not shown an adverse employment action."  <u>Id.</u> (citing <u>Pegram</u> 361 F.3d at 283).

Accordingly, defendant is entitled to summary judgment on plaintiff's claims of discrimination based on the allegedly harassing actions and on the April 2011 Supervisor's Evaluation Checklist.

C.    <u>No Evidence of Pretext as to Remaining Discrimination Claims</u>

Delgado next argues that Dr. Buisson cannot establish the fourth prong of a prima facie case as to her claims based on three admittedly adverse, ultimate employment actions because she cannot show that defendant treated similarly situated individuals more favorably under nearly identical circumstances.  Delgado contends alternatively that, even if plaintiff could establish a prima facie case, defendant has produced

legitimate, nondiscriminatory reasons for its actions and that Dr. Buisson has no evidence to create an inference that its reasons were pretextual.

The court will assume without deciding that plaintiff could establish a prima facie case of discrimination with regard to each of three events:  Delgado's non-selection of her for a permanent position in October 2010, Delgado's failure to pay her for teaching one class and the non-renewal of her contract.  The court therefore proceeds to the subsequent steps  of the <u>McDonnell-Douglas</u> burden-shifting analysis.

1.    <u>Nonselection for Permanent Position in October 2010</u>

Delgado has satisfied its burden to produce legitimate, nondiscriminatory reasons for selecting Tamika Duplessis and Dr. Tewolde for the open positions in October 2010.  Defendant's evidence shows that all candidates were interviewed by a committee of seven diverse instructors, all were asked the same ten questions and each candidate gave a presentation to the committee.  Each member of the hiring committee assigned a numeric score to each candidate.  Dr. Tewolde and Tamika Duplessis were the two highest scoring candidates, while Dr. Buisson had the fourth highest score.  The committee recommended that Dr. Tewolde and Tamika Duplessis be selected.  After receiving the committee's scores and recommendations, Dean Gruber interviewed all of the candidates.  He relied on the committee's recommendations and made the final decision to select Dr. Tewolde and Tamika Duplessis.

Thus, in response to defendant's evidence, Dr. Buisson must produce competent evidence sufficient to create a material fact issue "that the actual decisionmaker was motivated by race [or national origin] in taking the adverse employment action." Turner, 675 F.3d at 902.

To meet her burden to establish pretext, plaintiff argues that she was better qualified than either Dr. Tewolde or Tamika Duplessis because she had more teaching experience. In addition, Dr. Buisson notes that one committee member, her former supervisor, Dr. Denette, ranked her first among the candidates and that the committee chair, Dr. Sathyamoorthi, ranked her second. Plaintiff also cites inadmissible hearsay statements by Dr. Sathyamoorthi, who allegedly told her that he had recommended her for the position to Dean Gruber and was surprised when she was not selected. Plaintiff's Exh. 1, plaintiff's declaration at ¶ 30.

It is undisputed that Dr. Buisson was qualified for the position. However,

[i]n a promotion discrimination claim, a plaintiff may rebut a defendant's showing "by providing evidence that he was clearly better qualified than the employee selected for the position at issue." The question for the trier of fact thus becomes "whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination, and evidence of the plaintiff's superior qualification is thus probative of pretext." Notably, "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."

Warren v. City of Tupelo, 332 F. App'x 176, 181 (5th Cir. 2009) (quoting Celestine, 266

F.3d at 357) (emphasis added) (internal quotations and citations omitted).

Dr. Buisson fails to meet this high burden.  Even assuming that she had more

teaching experience than the selected candidates, that fact neither establishes that she was

clearly better qualified nor rebuts Delgado's evidence of its legitimate, nondiscriminatory

hiring process.  The hiring committee interviews, rankings and recommendations took

into account many more factors than just prior teaching experience.  Although two of the

committee members ranked plaintiff at the top of their lists, the other five did not, with

the result that three candidates scored higher overall than she did.  Dean Gruber's

statement that he relied on the committee's recommendations of Tamika Duplessis and

Dr. Tewolde is uncontradicted by any competent evidence.

"Selection of a more qualified applicant is a legitimate and nondiscriminatory

reason for preferring one candidate over another."  Sabzevari v. Reliable Life Ins. Co.,

264 F. App'x 392, 395 (5th Cir. 2008) (citing Tex. Dep't of Cmty. Affairs v. Burdine,

450 U.S. 248, 251-53 (1981)).  "In fact, basing a promotion decision on an assessment

of qualifications will almost always qualify as a legitimate, nondiscriminatory reason."

Scales v. Slater, 181 F.3d 703, 712 (5th Cir. 1999).

Dr. Buisson has presented nothing but speculation, unsupported opinions and

conclusory allegations that Dean Gruber's selections of Dr. Tewolde and Tamika

Duplessis were discriminatory.  "Aside from [her] own subjective beliefs that the

[selections] were race-based, [plaintiff] submits no evidence of pretext." Waters v. City of Dallas, No. 12-11127, 2013 WL 4406639, at *3 (5th Cir. Aug. 19, 2013). "[Plaintiff's] subjective belief that [she] was not selected for the [] position based upon race or [national origin] is [] insufficient to create an inference of the defendants' discriminatory intent." Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004) (quotation and citation omitted).

It is immaterial whether defendant's decision to select Tamika Duplessis and Dr. Tewolde may have been based on incorrect facts, so long as the decision was not motivated by discriminatory animus. Moss v. BMC Software, Inc., 610 F.3d 917, 926 (5th Cir. 2010); Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001). "Even if evidence suggests that a decision was wrong, [the court] will not substitute our judgment . . . for the employer's business judgment." Scott v. Univ. of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted). "The fact that the employers' [sic] reasonable belief [in its reasons for the adverse employment action] eventually proves to be incorrect . . . would not change the conclusion that the [action] had been non-discriminatory." Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir. 1993).

Dr. Buisson has failed to rebut Delgado's legitimate, nondiscriminatory reasons. Accordingly, defendant is entitled to judgment as a matter of law on this claim.

2.   <u>Nonpayment for Teaching One Class</u>

Dr. Buisson contends that she should have been paid an additional sum for teaching one extra class during the Spring 2011 semester.  Delgado has presented legitimate, nondiscriminatory reasons for its decision not to pay her.

Delgado's competent evidence establishes that instructors were paid based on the student enrollment in their classes.  To be considered as carrying a "full load" of classes and to be paid according to the contract, an instructor must teach three lectures and three labs with at least <u>fifteen</u> students in each class.  In the absence of a full load, an instructor's pay can be decreased from the full contract rate.  Delgado may decide to keep a course despite low enrollment for various reasons, including ensuring that an instructor gets paid the entirety of her contract.  To this end, Delgado allows classes with at least <u>ten</u> students to be counted as a full class towards a full load.

As of the date of registration for the Spring 2011 semester, Dr. Buisson had three classes with less than ten students and three with fifteen or more.  Rather than cancel any of the low enrollment classes and decrease plaintiff's pay, Duplessis rearranged her teaching schedule, combined two of her low enrollment classes for purposes of evaluating her teaching load and used the combined number to justify paying her for a full load.

If an instructor teaches more than a full load, Delgado may pay her an additional sum at the rate of $180 per student enrolled.  This is known as a "Z Contract."  Duplessis

states in his affidavit that, during the registration period, he told Dr. Buisson that <u>if</u> the enrollment in her total class load for the semester did not decrease, she <u>might</u> receive a Z Contract for her Chemistry 143-101 Lab, which had 7 students enrolled at the time. Dr. Buisson testified that Duplessis told her at that time that she <u>would</u> receive a Z Contract.  The court resolves this factual conflict in favor of Dr. Buisson's version, for purposes of defendant's summary judgment motion.

However, enrollment in plaintiff's classes decreased after registration.  After combining two classes for purposes of calculating her course load, plaintiff's final course load was still not a full load because she did not have three lectures and three labs with at least fifteen students in each.  Nonetheless, Delgado paid her for a full load.  Under Delgado's policy, Dr. Buisson was not entitled to receive a Z Contract because she did not carry a full load, as defined by the policy.

Plaintiff appears to believe that she was entitled to a Z Contract because she taught seven classes (four of which had less than ten students).  Plaintiff's Exh. 1, plaintiff's declaration at ¶ 45.  However, she has failed to produce any <u>evidence</u> that Delgado's policy was other than as described above, <u>i.e.</u>, that she must first carry a full load, defined as at least fifteen students in three lectures and three labs, as a prerequisite to any Z Contract.  It is undisputed that her classes did not have that level of enrollment.

Dr. Buisson has failed to rebut defendant's legitimate, nondiscriminatory reasons for not awarding her a Z Contract or to produce any evidence that those reasons were a

pretext for race or national origin discrimination.  Even if Delgado's calculations were mistaken, it is entitled to summary judgment in its favor as matter of law on this claim. Moss, 610 F.3d at 926; Mato, 267 F.3d at 452.

3.     Nonrenewal of Contract in July 2011

In early June 2011, Dean Gruber e-mailed several instructors, including plaintiff, asking them to talk to him.  Dr. Buisson testified that Dean Gruber offered all seven or eight of these persons a permanent position.  She testified that, when she went to talk to him on June 9, 2011, he said that he was "giving me a permanent position."  Defendant's Exh. 1, plaintiff's deposition at pp. 124-25.

Dean Gruber admits that he was considering rolling over several instructors, including plaintiff, from temporary to permanent for the Fall 2011 semester and that he sent an email asking those instructors to come to his office to discuss the possibility.  He denies that he told Dr. Buisson that he would give her a permanent position because no such position had been approved by the Board and he had not yet made any decision or recommendation regarding any of the instructors.  Defendant's Exh. 5, Gruber affidavit at ¶ 21.  The court resolves this factual conflict, as it must, in favor of Dr. Buisson's testimony that Dean Gruber offered her a permanent position.

It is undisputed that no contract was signed.  "Thereafter, after considering Dr. Buisson's tenure at Delgado" and the fact that her contract was expiring, Dean Gruber decided not to offer her a permanent position.  Id.  On July 6, 2011, he told her that

Delgado would not renew her contract for the following school year.  Dean Gruber

details in his affidavit "[s]ome of the considerations in making my decision," all twelve

of which are legitimate, nondiscriminatory reasons that are supported by the evidence.

Id. at ¶ 22.

Plaintiff thus has the "ultimate burden . . . to persuad[e] the trier of fact that the

defendant intentionally discriminated against" her in deciding not to renew her contract.

Turner, 675 F.3d at 900.  "The issue at the pretext stage is whether [defendant's] reason,

even if incorrect, was the real reason for not rehiring [plaintiff]."  Barrientos v. City of

Eagle Pass, 444 F. App'x 756, 760 (5th Cir. 2011) (citing Evans v. City of Houston, 246

F.3d 344, 355 (5th Cir. 2001)).

Again, Dr. Buisson has provided nothing but "conclusory allegations, speculation,

and unsubstantiated assertions[, which] are inadequate to satisfy the nonmovant's burden

in a motion for summary judgment."  Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir.

2002) (quotation omitted).  In the absence of any evidence of discriminatory animus,

Delgado is entitled to summary judgment as a matter of law on this claim.

IV.   RETALIATION CLAIMS

Dr. Buisson claims that the same employment actions described in the preceding

section were also retaliatory.

> A plaintiff establishes a prima facie case of retaliation by showing
> (i) [s]he engaged in a protected activity, (ii) an adverse employment action
> occurred, and (iii) there was a causal link between the protected activity

33

and the adverse employment action.  If the plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action.  If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action.

Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir.), cert. denied sub. nom

Ketterer v. Yellow Transp., Inc., 133 S. Ct. 136 (2012) (citing Taylor v. United Parcel

Serv., Inc., 554 F.3d 510, 523 (5th Cir. 2008); Long v. Eastfield Coll., 88 F.3d 300, 304-

05 & n.4 (5th Cir. 1996)) (quotation omitted).

Delgado does not dispute that Dr. Buisson engaged in protected activity during her

employment.  As to the allegedly harassing actions and the less than stellar performance

review, defendant argues that plaintiff cannot establish the second prong of a prima facie

case because these were not materially adverse actions, as defined by the United States

Supreme Court.

As noted above, a plaintiff alleging unlawful retaliation is not required to show

that she suffered an "ultimate employment decision" of the same kind that must be

established for her discrimination claims.  Mitchell, 326 F. App'x at 854-55 (citing

White, 548 U.S. at 67).  Rather, "Title VII's antiretaliation provision prohibits any

employer action that 'well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.'" Thompson v. N. Am. Stainless, LP, 131 S. Ct.

863, 868 (2011) (quoting White, 548 U.S. 53, 68 (2006)).  The Supreme Court

characterizes such actions as "materially adverse."  White, 548 U.S. at 68.  "We speak

of material adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth a general civility code for the American workplace."  Id. (quotation omitted).

As a matter of law, none of the harassing actions or the negative performance review alleged by plaintiff are materially adverse actions that would dissuade a reasonable worker from complaining of discrimination.  See Magiera v. City of Dallas, 389 F. App'x 433, 437-38 (5th Cir. 2010) (Female police officer asserted that she suffered retaliation when her supervisors sent her home from work after she requested a control number to file a complaint of sexual harassment with Internal Affairs, other officers "clicked" her on the radio and refused to partner with her, and Internal Affairs investigated complaints lodged against her with heightened scrutiny.  None of these actions was materially adverse, as a matter of law.); Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331-32 (5th Cir. 2009) (quoting White, 548 U.S. at 68) (Plaintiff alleged that, after she returned from paid leave pending investigation of her sexual harassment complaint, personal items were taken from her desk, the locks on her office had been changed, she was not allowed to close her office door, and she was chastised by superiors and ostracized by co-workers.  "As a matter of law, these allegations do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct. . . .  These actions would not dissuade a reasonable

35

employee from making a charge of discrimination."); <u>King</u>, 294 F. App'x at 85 (citations omitted) (allegations of rudeness and unfriendliness by supervisor and co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); <u>Grice v. FMC Techs., Inc.</u>, 216 F. App'x 401, 407 (5th Cir. 2007) (citation omitted) (unjustified reprimands are "trivial" and not materially adverse); <u>DeHart v. Baker Hughes Oilfield Operations, Inc.</u>, 214 F. App'x 437, 442 (5th Cir. 2007) (written disciplinary warning for insubordination and being argumentative would not dissuade a reasonable worker from making or supporting a charge of discrimination when "there were colorable grounds for the warning and a reasonable employee would have understood a warning under these circumstances was not necessarily indicative of a retaliatory mind-set").  Dr. Buisson therefore fails to carry her burden to establish the second prong of a prima facie case as to these events.

As to the three materially adverse employment actions of failure to select plaintiff for a permanent position in October 2010, failure to pay her for an extra class and failure to renew her contract, the court assumes without deciding that plaintiff could establish a prima facie case of retaliation.  In response in the three-phase burden-shifting scheme applicable to this claim, Delgado has produced the same legitimate, nonretaliatory reasons for its actions described in the preceding section.

The burden therefore shifts to Dr. Buisson to produce evidence to show that retaliation was the "but-for cause" of defendant's actions. In Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2532-33 (2013), the Supreme Court held that retaliation claims are subject to a "but-for" causation test. "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 133 S. Ct. at 2533. In other words, "pretext is shown only if the adverse employment action would not have occurred 'but for' the protected conduct." Reine v. Honeywell Int'l Inc., 362 F. App'x 395, 398 (5th Cir. 2010) (citing Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005)).

Dr. Buisson's evidence fails to create a material fact dispute as to whether retaliation was the but-for cause of the materially adverse acts of which she complains. "It does not matter that [plaintiff] has proved the other required prima facie elements of Title VII retaliation because, crucially, she has not introduced any evidence of causation." Mooney v. Lafayette Cnty. Sch. Dist., No. 12-60753, 2013 WL 4018662, at *7 (5th Cir. Aug. 8, 2013) (citing Nassar, 133 S. Ct. at 2533; Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003)).

Dr. Buisson "has not attempted to establish any causal link between the allegedly retaliatory actions and [her] participation in a protected activity. [Her] subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary

judgment." <u>Grice</u>, 216 F. App'x at 407 (citing <u>Haley v. Alliance Compressor LLC</u>, 391

F.3d 644, 651 (5th Cir. 2004); <u>Travis v. Bd. of Regents</u>, 122 F.3d 259, 266 (5th Cir.

1997)).  She has no evidence to support her allegations that any of defendant's decisions

was motivated by retaliation.  <u>See</u> <u>Irons v. Aircraft Serv. Int'l, Inc.</u>, 392 F. App'x 305,

313-14 (5th Cir. 2010) (summary judgment properly granted as to plaintiff's retaliation

claim when he failed to adduce any evidence to support an inference that defendant's

proffered justification was pretextual).

Accordingly, defendant is entitled to summary judgment in its favor as a matter

of law on this claim.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that defendant's motion for

summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH

PREJUDICE, plaintiff to bear all costs of these proceedings.  Judgment will be separately

entered.

New Orleans, Louisiana, this _____12th_____ day of November, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE